## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.:_____

JOSE A. PUMARES, an Individual,

                Plaintiff,

vs.

SOURCE ONE MORTGAGE
CORPORATION, a Florida Corporation,
Fannie Mae, 360 MORTGAGE GROUP,
LLC, a Florida Limited Liability Company
and ALBERTO QUIROZ, Individually,

                Defendants.       /

### COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

COMES NOW, the Plaintiff, JOSE A. PUMARES ("Plaintiff"), SOURCE ONE MORTGAGE CORPORATION, FANNIE MAE, 360 MORTGAGE GROUP, LLC and ALBERTO QUIROZ as follows:

### JURISDICTION AND VENUE

1.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 1337.  This is an action for actual and statutory damages of the Federal Truth in Lending Act, 15 U.S.C. §§1640, *et sequi.* ("TILA"), Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), Florida Consumer Collection Practices Act, Florida Statutes §§ 559.55-559.785, ("FCCPA"), Florida Deceptive and Unfair Practices Act, FLA. STAT. §501.20491, ("FDUTPA"), and for violations of the Real Estate Settlement Practices Act, 12 U.S.C. §2605 et seq., ("RESPA").

2.      Under 28 U.S.C. § 1367(a), this court has supplemental jurisdiction over Plaintiff's state law FCCPA claim in that it is so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

3.     Venue is proper in the Southern District of Florida because Plaintiff resides here and Defendants conduct business in this District, and because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## PARTIES

4.     At all times material hereto, Plaintiff, JOSE A. PUMARES ("Mr. Pumares" or "Plaintiff"), is *sui juris*, and a resident of Broward County, Florida and owns a home which is Plaintiff's primary residence in Broward County.

5.     At all times relevant to this Complaint, Mr. Pumares, is a "consumer" as that term is defined by 15 U.S.C. 1692(a)(3) and Florida Statutes §559.55(2), and/or persons with standing to bring a claim by virtue of being directly affected by violations of the Acts.

6.     At all times material hereto, Defendant, FANNIE MAE was and is a foreign corporation, authorized by Congress to provide a secondary market for residential mortgages, duly licensed to transact business in the State of Florida, and has a principal address of 3900 Wisconsin Avenue, NW, Washington, D.C. 20016.

7.     At all times material hereto, Defendant, 360 MORTGAGE GROUP, LLC ("360 Mortgage" or "Defendant") is a servicer and transacts business in the State of Florida.

8.     At all times relevant to this Complaint, Defendant 360 was and is a "person" as said term is defined in 12 USCA § 2605(i)(2), that services the loan obligation owned by FANNIE MAE and secured by a mortgage upon Plaintiff's primary residence and primary dwelling located at: 12850 SW 4 Court, Unit 404, Pembroke Pines, Florida 33027.

9.     The Promissory Note signed by Plaintiff in connection with the mortgage serviced by 360 MORTGAGE is a consumer credit transaction within the meaning of, and subject to TILA.

10.     The mortgage loan in question is a "residential mortgage transaction" as defined in 15 U.S.C. § 1602(x).

11.     The mortgage loan in question is a "federally related mortgage loan" as defined in Sections 3 and 8 of 12 U.S.C. §2602(1) & 2607, RESPA.

12.     The mortgage loan in question under Florida Statute §1.01(3), and is subject to the provisions of Fla. Stat. § 559.72 because said section applies to "any person" who collects or attempts to collect a consumer debt as defined in Fla. Stat. § 559.55(1).

13.     At all times relevant to this Complaint, Defendant, 360 Mortgage, regularly collects or attempts to collect debts for other parties and is a "debt collector" as said term is defined under 15 U.S.C. §1692a(6) and Florida Statute §559.55(6).

14.     At all times relevant to this Complaint, Defendant 360 Mortgage, regularly uses the mail and telephone in a business for the purpose of collecting consumer debts.

15.     At all times relevant to this Complaint, Defendant 360 Mortgage was acting as a debt collector with respect to the collection of Plaintiff's alleged debt.

16.     At all times relevant to this Complaint, Defendant, SOURCE ONE MORTGAGE CORPORATION ("SOURCE ONE" or "Defendant") is a business that does business in Florida.

17.     At all times relevant to this Complaint, Defendant, ALBERTO QUIROZ ("Quiroz", "Broker" or "Defendant"), an Individual, is a Broker of One Source Mortgage Corporation who transacts business in the State of Florida.

18.     At all times relevant to this Complaint, Defendants are in the business of providing settlement services as that term is defined by 12 U.S.C. § 2602(3) and 24 C.F.R. § 3500.2(b).

## FACTUAL ALLEGATIONS

19.     On or about February 1, 2013, Plaintiff, Mr. Pumares, contacted Defendant – Quiroz to obtain a refinancing loan on his current home that Plaintiff uses for his personal use, family, or household purposes.

20.     The property Plaintiff desired to refinance was located at 12850 SW 4th Court, Unit 404, Pembroke Pines, Florida 33027 ("Property").

21.     On March 5, 2013, Mr. Pumares' Property was appraised for $52,000.00, by 360 Mortgage.

22.     After a review of Mr. Pumares' credit report, Defendant-Quiroz offered Plaintiff a four percent (4.0%) FANNIE MAE mortgage and Plaintiff's maximum cost to close set at $1,177.00.

23.     On or about May 21, 2013, the day of the closing, for the Property, Mr. Pumares was presented with a myriad of loan documents to sign.

24.     At the closing, Mr. Pumares noticed that the interest rate on the loan was increased from 4.0% to 4.5% and the broker's commission was increased to $4,215.00 for no added benefit to the Plaintiff.

25.     Mr. Pumares promptly asked the title company's agent, Michelle A. Lopez, why the closing amounts had been increased without notice and without explanation.

26.     Mr. Pumares and the closing agent then requested Plaintiff's Good Faith Estimate (GFE) from the Broker and discovered that all of the figures and terms had been increased.

27.     Michelle A. Lopez then contacted Defendant Quiroz and asked Defendant Quiroz why there was an increase in interest rate.

28.     Mr. Pumares clearly realized the loan was contrary to the offer that Plaintiff and Defendant Quiroz had agreed to and accepted.

29.     Mr. Pumares was given no explanation given for the sudden increase in the interest rate.

30.     Mr. Pumares, although thoroughly disgusted, aggravated and frustrated by the acts of the Defendants, did communicate to Quiroz that he would like to cancel his origination of the loan.

31.     In fact, but for Mr. Pumares's fear of the financial loss for the monies spent towards his closing expenses that he had incurred in order to qualify his property for the refinance, Mr. Pumares wished to cancel the entire closing and verbalized same to the closing agent.

32.     Mr. Pumares felt compelled to complete the closing even-though he reasonably believed that he was deceived.

33.     This deceptive loan "bait and switch" scheme cost Mr. Pumares an additional $4,215.00 for no added benefit to the Plaintiff.

34.     The Defendant added no additional benefit and worked no harder to receive the additional $4,215.00.

35.     This was unfair and deceptive to Mr. Pumares, as a consumer.

36.     All of the Defendants knew or should have known that based upon the facts, there was no reason to increase the interest rate to 4.5% other than to prey on Mr. Pumares' ignorance on his right to rescind the entire transaction and receive a refund of all funds.

37.     The acts of all of the Defendants were done with willful and wanton disregard in order to extract an additional $300.00 per year from the Plaintiff - which represented the difference between 4%, the amount agreed upon by all of the parties, and 4.5%, the amount the Broker increased the rate to in order to receive the additional commission - $4,215.00 of unearned commission and conversion of the Plaintiff's $2,500.00.  In fact, these actions were taken against the Plaintiff's wishes.

38.     Defendants Quiroz and FANNIE MAE did not include the "broker fee" within the "finance charge" it disclosed to Plaintiff.

39.    Plaintiff, Mr. Pumares, is a residential mortgage borrower who received settlement services from Defendants in connection with the closing of his loan.

40.    Mr. Pumares was charged and subsequently paid fees for certain settlement services.

41.    Defendants sought to collect a debt from Plaintiff arising from an alleged debt incurred by Plaintiff for personal, family, or household purposes; more specifically, the debt at issue was allegedly incurred on a note and secured by a mortgage.

42.    Defendants Quiroz, Source One and Fannie Mae and FANNIE MAE were grossly negligent and did violate Florida's Fair dealings and were unjustly enriched.

43.    Plaintiff believes and therefore avers that Defendants Quiroz and FANNIE MAE, have an ongoing business relationship that was never explained to him.

44.    Any purported broker agreement would be void under Florida law because it failed to include a notice of Plaintiffs' right to cancel such contract and it failed to satisfy the minimal requirements of a broker agreement (requiring agreements to specify rate, term and overall cost of loan broker offers to seek).

45.    Mr. Pumares was a prime target for predatory mortgage lenders and brokers because of his good credit and good income.

46.    Mr. Pumares was an unsophisticated borrower who did not understand many of the basic terms and costs of a typical mortgage loan transaction.

47.    Mr. Pumares, in reliance of Defendants Quiroz and FANNIE MAE assertions, completed additional documents relating to the loan application.

48.    Defendant Quiroz was not able to explain to Mr. Pumares how the incorrect interest rate/amount would be corrected.

49.     Believing that this was a mistake and that these issues could be corrected later, a representative of the title company instructed Mr. Pumares to sign the loan documents.

50.     After a few weeks, Plaintiff realized that no correction would be forthcoming.

51.     Therefore, it is apparent that Defendants Source One and FANNIE MAE authorized, approved, and/or ratified each document and procedure employed by Defendant Quiroz.

52.     Had Plaintiff known of the scheme by Defendant Quiroz and FANNIE MAE to increase his interest rate to 4.5% from 4.% and to steal an additional $2,500.00 from Plaintiff, Mr. Pumares, would not have agreed to the loan and would have sought a less expensive, more advantageous loan else where.

53.     Upon information and belief, and the custom and industry of mortgage practices, the $4,215.00 was measured and/or calculated based on the rate of interest which Quiroz was able to get Plaintiff to sign for, *i.e.*, Defendants Quiroz's and Source One's compensation was increased by an amount corresponding to a higher rate of interest on the loan. The higher the rate, the more Defendants Quiroz's and Source One's could receive. Such a payment is sometimes known in the mortgage industry as a "yield spread premium."

54.     As part of the transaction, Defendant Quiroz and FANNIE MAE were more than adequately compensated for its services by Plaintiff from the loan proceeds. The mortgage broker provided no goods or services for the additional "yield spread premium" fee.

55.     Plaintiff received no economic benefit from this transaction and continues to suffer economic and emotional damages as a result of the Defendant's Quiroz, Source One and FANNIE MAE's conduct described herein.

56.     On or about March 24, 2015, Mr. Pumares, concerned about the fact that the interest rate had not been changed, sent a Qualified Written Request ("QWR") to 360 MORTGAGE GROUP, LLC, the servicer for the instant loan.

57.     Mr. Pumares then sent another QWR on April 25, 2015.

58.     The Defendant, 360 MORTGAGE GROUP, LLC, did not address the Plaintiff's dispute with the interest rate, accounting and the servicing of the instant loan, but merely regurgitated the fact about what monies have been received from Mr. Pumares and how the funds were distributed.

59.     Mr. Pumares suffered damages in justifiable reliance on the representation.

60.     Despite the aforementioned acts by Defendants, the Defendants continue to benefit from the use of the Plaintiff hard-earned money and have not rectified any of the acts more fully alleged above.

61.     Defendants continue to continue to collect and refuse to correct the acts of their deception with malicious intent.

62.     The Defendants have deceived the Plaintiff and engaged in a pattern and practice of unfair and deceptive acts against the Plaintiff.

63.     All conditions precedent to the bringing of this action have been performed, waived or excused.

## COUNT I
## VIOLATIONS OF RESPA - SECTION 8(B) BY ALBERTO QUIROZ, SOURCE ONE MORTGAGE CORPORATION and FANNIE MAE

64.     Plaintiff re-alleges and reaffirms the allegations contained in Paragraphs 1 through 70 above as though fully set forth herein.

65.     At all times herein, ALBERTO QUIROZ was acting as agent for and at the direction of Defendants SOURCE ONE and FANNIE MAE.

66.     At all times herein, Defendants SOURCE ONE, and FANNIE MAE failed to properly supervise its employees, agents and representatives.

67.     In the instant case, Defendants ALBERTO QUIROZ and SOURCE ONE engaged in practices counter to Plaintiff's wishes.

68.     That Defendants violated RESPA, Section 8(b), 12 U.S.C. § 2607(b), and related federal regulations and interpretations by accepting and/or giving a charge made or received for a real estate settlement service other than for services actually rendered.

69.     That HUD has interpreted Section 8(b) as prohibiting "unearned fees" when (among other things) "one settlement service provider marks up the costs of the services performed or goods provided by another settlement service provider without providing actual, necessary, and distinct services, goods, or facilities to justify the additional charge." HUD Statement of Policy 2002-1, 66 Fed. Reg. 53, 052, 53, 407-58 (Oct. 18, 2001) (the "Policy Statement").

70.     That Mr. Pumares did not benefit from the acts of Defendants.

71.     That Mr. Pumares is a person "charged for the settlement service involved in the violation."

72.      Defendant, Quiroz, and FANNIE may have received an illegal kickback in violation of Hud's Reg X, **Sec. 3500.14 Prohibition against kickbacks and unearned fees, subsections** (a), (b), and (c).

73.     Defendants violated RESPA, Section 8(b), 12 U.S.C. § 2607(b), and related federal regulations and interpretations by accepting and/or giving a charge made or received for a real estate settlement service other than for services actually rendered.

74.     Consequently, any violation of Section 8 violation is also a violation of section 8 of RESPA (12 U.S.C. 2607) and is subject to enforcement as such under Sec. 3500.19.

75.     Section 8 of RESPA prohibits anyone from giving or accepting a fee, kickback or anything of value in exchange for referrals of settlement service business involving a federally related mortgage loan. In addition, RESPA prohibits fee splitting and receiving unearned fees for services not actually performed.  It also prohibits a person from giving or accepting any part of a charge for services that are not performed.

76.     Defendants, SOURCE ONE and FANNIE MAE, have failed to account for this kickback or return any funds collected in excess the amount allowed by law.

77.     In the instant case, the Good Faith Estimate ("GFE") statements were not consistent and resulted in a deceptive closing with $4,215.00 in additional fees.

78.     Mr. Pumares alleges that the Defendants engaged in unlawful pre- and post- closing practices and collection practices and have established common patterns and practices as more fully described hereto in attempting to collect a consumer related debt.

79.     That pursuant to RESPA Section 8(b)(d)(2), 12 U.S.C. §2607(d)(2), Mr. Pumares is entitled to damages from Defendants "in an amount equal to three (3) times the amount of any charge paid for such settlement services."

80.     Plaintiff has retained the services of the undersigned attorney who is entitled to reasonable fees upon prevailing, §559.77(2), Fla. Statutes.

        **WHEREFORE**, Plaintiff, JOSE A. PUMARES, respectfully prays that judgment be entered against Defendants, ALBERTO QUIROZ, SOURCE ONE MORTGAGE CORPORATION and FANNIE MAE, for treble damages, pre and post judgment interest, for

statutory damages, along with court costs and reasonable attorney's fees pursuant to RESPA Section 8(b)(d)(2), 12 U.S.C. §2607(d)(2).

<u>COUNT II</u>
<u>VIOLATION OF REAL ESTATE SETTLEMENT</u>
<u>PROCEDURES ACT (RESPA), 12 U.S.C. §2605 AS TO 360 MORTGAGE</u>

81.     Plaintiff re-alleges and re-affirms the allegations contained in paragraphs 1 through 87 as though fully set forth herein.

82.     Defendant, 360 MORTGAGE is a "servicer'' of a federally related mortgage loan within the meaning of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2605.

83.     On March 18, 2015, the Mr. Pumares sent Defendant, 360 MORTGAGE a "qualified written request" as that term is defined under RESPA, 12 U.S.C. § 2605(e)(1)(B), regarding the crediting of payments on his account.  In the qualified written request, the Plaintiff specified that he needed a full accounting as of the inception of the note.

84.     Mr. Pumares's written requests for information about his account and correction of Defendants' errors were ''qualified written requests'' (QWR) within the meaning of RESPA were not addressed and Defendant 360 MORTGAGE failed to acknowledge the receipt of said QWR within five (5) days.

85.     360 MORTGAGE GROUP, LLC deliberately failed to respond in a proper and timely manner to Plaintiff's ''qualified written requests'' for information about, and corrections to, his mortgage account, in violation of 12 U.S.C. §2605(e).

86.     Defendant, 360 MORTGAGE engaged in a pattern and practice of violating RESPA.

87.     Defendant, 360 MORTGAGE violated RESPA, 12 U.S.C. § 2605(e)(1)(A), by failing to provide a written response acknowledging receipt of the Plaintiff's qualified written request no later than 5 days after receipt of the request.

88.     Defendant 360 MORTGAGE GROUP, LLC violated RESPA, 12 U.S.C. § 2605(e)(2)(C) by failing to provide the Plaintiff with the information and documentation requested, or an explanation why the information sought was unavailable, no later than thirty (30) days after receipt of the Plaintiff's qualified written request.

89.     Defendant 360 MORTGAGE GROUP, LLC violated RESPA, 12 U.S.C. § 2605(e)(2) by refusing to cease its collection efforts after receiving the Plaintiff's qualified written request.

90.     Defendant 360 MORTGAGE GROUP, LLC has engaged in a pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA as set forth in 12 U.S.C. § 2605.

*WHEREFORE*, Plaintiff demands judgment against 360 MORTGAGE GROUP, LLC and for a proper accounting and application of his mortgage payments and for actual, statutory, treble and/or punitive damages, along with any other and further relief as the court deems just and proper, award actual and compensatory damages, including those for mental anguish, in an amount to be determined at trial; pursuant to 12 U.S.C. §2605.  Declare that Defendants violated RESPA, enjoin Defendant from committing any future violations of the Act, and award the Plaintiff actual damages and statutory damages pursuant to 12 U.S.C. § 2605(f);  Award Plaintiff reasonable attorney's fees and litigation expenses, plus costs of suit, pursuant to 12 U.S.C. § 2605(f).

## COUNT III
## VIOLATION OF TRUTH IN LENDING ACT (TILA), 15 U.S.C. §1641 – AS TO 360 MORTGAGE and FANNIE MAE

91.     Plaintiff re-alleges and re-affirms the allegations contained in paragraphs 1 through 97 as though fully set forth herein.

92.    Defendants have engaged in a uniform, systematic pattern and practice of charging borrowers excessive and unearned fees for settlement services in violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 *et seq.*

93.    As a result of the illegal mark-ups of settlement services, the Annual Percentage Rate ("APR") and "finance charge" is understated in violation of the Truth-In-Lending Act (TILA) 15 U.S.C. § 1601 et seq.

94.    The Defendants violated the TILA by failing to properly deliver all "material" disclosures as required by the TILA , including the following:

    (a) by failing to disclose accurately and properly the finance charge, in violation of 15 U.S.C. § 1638(a)(3);

    (b) by failing to disclose accurately and properly the "amount financed" in violation of 15 U.S.C. § 1638(a)(2); and,

    (c) by failing to disclose accurately and properly the "annual percentage rate", in violation of 15 U.S.C. § 1638(a)(4).

95.    The Defendants further violated TILA by failing to deliver any disclosures to Mr. Pumares in a form he could keep prior to the consummation of the transaction as required by 15 U.S.C. § 1638(b)(1).

96.    The Defendants further violated the TILA in its treatment of the required disclosures as estimated concerning the terms of the credit that the Defendants would provide to Mr. Pumares as a consumer.

97.    By reason of the aforesaid violations of TILA, Defendants are liable to the Mr. Pumares for actual and statutory damages, including but not necessarily limited to twice the finance charge pursuant 15 U.S.C. § 1640(a).

98.     A new creditor must provide notice of its status pursuant to 15 U.S.C. §1641(g):

(1) In general

In addition to other disclosures required by this subchapter, not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer, including—

(A) the identity, address, telephone number of the new creditor;

(B) the date of transfer;

(C) how to reach an agent or party having authority to act on behalf of the new creditor;

(D) the location of the place where transfer of ownership of the debt is recorded; and

(E) any other relevant information regarding the new creditor.

99.     At all times material hereto, Defendant FANNIE MAE has represented to Mr. Pumares to be a "creditor" as the term is defined in 15 U.S.C. §1602(g).

100.    The Defendants, 360 MORTGAGE and FANNIE MAE, failed to comply with Section 1464 of the Truth in Lending Act Amendments Section 129F.

101.    The Defendants, 360 MORTGAGE and FANNIE MAE, failed to comply with Section 1464 of the Truth in Lending Act Amendments Section 129G.

102.    At all times material hereto, Defendant FANNIE MAE is, was and has represented to Mr. Pumares to be a "creditor" as the term is defined in 15 U.S.C. §1602(g).

103.    At all times material hereto, 360 MORTGAGE is and was a loan servicer as the term is defined in 12 U.S.C.A. § 2605(i)(2), that services the loan obligation owned by FANNIE MAE and secured by a mortgage upon Plaintiff's primary residence and principal dwelling.

104.    360 MORTGAGE did not properly respond to Plaintiff's written request and did not satisfy the requirements of 15 U.S.C. §1641(f)(2).

105.    As its servicer, 360 MORTGAGE is/ was the employee and agent of the holder of the note, FANNIE MAE.

106.    Upon information and belief, the unknown owner before the note and mortgage was assigned to 360 MORTGAGE for Collection; FANNIE MAE has considerable control over 360 MORTGAGE by virtue of a Servicing Agreement that governs their relationship.

107.    Upon information and belief, one of the very specific functions the Servicing Agreement was designed to encompass, was 360 MORTGAGE and FANNIE MAE responding to requests under 15 U.S.C. 1641(f)(2).

108.    Upon information and belief, the owner of the note could have terminated 360 MORTGAGE's employment at any time.

109.    The owner of the note is responsible for 360 MORTGAGE GROUP, LLC's failure to respond properly to Plaintiff's request since 360 MORTGAGE GROUP, LLC was acting in furtherance and within the scope of its employment for the holder in due course.

    **WHEREFORE**, Plaintiff, JOSE PUMARES, as an individual and a consumer demands judgment for damages against FANNIE MAE and 360 MORTGAGE GROUP, LLC:

    (a)     Actual damages to be established at trial pursuant to 15 U.S.C. § 1640(a)(1);

    (b)     Statutory damages in the amount of twice the finance charge (of up to $4000.00) pursuant to 15 U.S.C. § 1640(a)(2) )(A)(iv); and,

    (c)     Reasonable costs and reasonable attorney's fees in accordance with 15 U.S.C. § 1640; and such other further relief as justice may require. and the unknown holder in due course for actual or statutory damages, and punitive damages, attorney's fees and costs, and

compensatory damages, including those for mental anguish, in an amount to be determined at trial pursuant to 15 U.S.C. §1640(a)(3).

**COUNT IV**
**VIOLATION OF FLORIDA CONSUMER COLLECTION PRACTICES ACT (FCCPA),**
**FLA. STAT. §559(Part VI)**

110.    Plaintiff re-alleges and re-affirms the allegations contained in paragraphs 1 through 116 as though fully set forth herein.

111.     This is an action for statutory damages and for injunctive relief, plus attorney's fees and costs brought pursuant to the Florida Consumer Collections Practices Act (FCCPA) §559.55, et seq., 559.72(9), and 559.77, Fla. Stat.

112.    Plaintiff is a consumer within the meaning of §559.55(2) SOURCE ONE MORTGAGE CORPORATION, FANNIE MAE,360 MORTGAGE GROUP, LLC and ALBERTO QUIROZ are debt collectors within the meaning of §559.55(6).

113.    All Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

114.    As a consequence of the acts of the defendants' Plaintiff are entitled to statutory and actual relief for the acts of the Defendants.

115.    The FCCPA permits for the recovery of damages for emotional distress and is not subject to the impact rule.  *Florida Department of Corrections v. Abril*, 969 So. 2d 201 (Fla. 2007).

116.    All Defendants violated §559.72(9) by claiming, attempting or threatening to enforce a debt when such persons knew that the debt was not legitimate.

117.    Plaintiff has retained the services of the undersigned attorney who is entitled to reasonable fees upon prevailing, §559.77(2), Fla. Stat.

**WHEREFORE**, Plaintiff, JOSE PUMARES, respectfully requests that judgment for damages be entered against SOURCE ONE MORTGAGE CORPORATION, FANNIE MAE,360 MORTGAGE GROUP, LLC and ALBERTO QUIROZ for actual and statutory damages, punitive damages, attorney's fees and costs, pursuant to Fla. Stat. §559.77(2) and for such other and further relief as justice may require.

<u>COUNT V</u>
<u>VIOLATION OF DECEPTIVE AND UNFAIR TRADE PRACTICES</u>

118.    Plaintiff re-alleges and re-affirms the allegations contained in paragraphs 1 through 124 as though fully set forth herein.

119.    The Florida Deceptive and Unfair Trade Practices Act (FDUTPA) provides for a civil cause of action for "unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. §501.20491.

120.    This is an action for injunctive and declaratory relief pursuant to the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §501.201, et seq.(hereinafter "the Act")and Chapter 86, FLA. STAT.

121.    At all times relevant hereto, Mr. Pumares was a "consumer" as defined by FLA. STAT. §501.203(7).

122.    At all times relevant hereto, Defendants were engaged in "trade or commerce" as defined by FLA. STAT. §501.203 (8).

123.    All of the Defendants in this count failed to observe real estate settlement procedures and servicing practices as required by state and federal law.

124.    The Defendants violated the Act by engaging in unfair and deceptive acts and practices as more fully stated herein.

125.    The acts of the Defendants were reckless and unconscionable.

126.    Plaintiff, upon information an belief, alleges that, based on their legal duty by virtue of their licensing by the State of Florida or the special relationship of trust and confidence imposed upon them by law, Defendants owed Mr. Pumares a legal duty of undivided service and loyalty, which duty is fiduciary in nature and imposed upon the Solomon's the highest standard of good faith, including a duty of disclosure and to avoid conflicts of interest.

127.    The Defendants and each of them breached their respective fiduciary duties to Plaintiff by engaging in the acts previously alleged herein.

128.    As a direct and proximate result of Defendants breach of fiduciary as aforesaid, Mr. Pumares has been damaged.

129.    Defendants' actions were display intentional misconduct such that Mr. Pumares is entitled to punitive damages in an amount to be determined by the trier of fact, which will be pled when appropriate and in accordance with Section 768.72 of the Florida Statutes.

130.    At the time of the closing, Defendants were negligent in their actions.

131.    Upon information and belief, in addition to the facts alleged in the preceding paragraphs, the Defendants engaged in deceptive servicing and collections of the loan by:

      a.) Failing to properly disclose at or prior to closing all costs, fees and expenses associated with the loan; and,

      b.) Obtaining a yield spread premium (YSP) based upon the "selling" of a higher interest rate, and/or non disclosure of the range of interest rates for which Defendants qualified.

132.    All such actions by Defendants are unconscionable acts or practices, and/or unfair or deceptive acts or practices in the conduct of trade or commerce in violation of §501.204, Florida

Statutes, and entitle Mr. Pumares to a setoff, recoupment or civil penalty, nominal and actual damages, attorney's fees and costs.

133.    The Plaintiff is otherwise entitled to recoupment of said amounts if the violations of TILA are time barred.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court enter judgment against Defendants, ALBERTO QUIROZ, SOURCE ONE MORTGAGE CORPORATION, 360 MORTGAGE GROUP, LLC and FANNIE MAE, declaring the Defendant acts unconscionable and in violation of the Florida Deceptive and Unfair Practices Act, injunctive and declaratory relief against the Defendants for the creation of said illegal document, actual and statutory relief for the creation of said null and void instrument, declaratory relief under Florida's Deceptive and Unfair Trade Practices and granting attorney's fees and court cost pursuant to Florida Statute §501.2105 and such other relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff, JOSE A. PUMARES, hereby demands a trial by jury of all issues so triable.

Respectfully Submitted By,

MALOY LAW GROUP, LLC
540 NW 165 Street Road, Suite #210
Miami, Florida   33169
Telephone #:   (786) 483-7541
Facsimile #:  (305) 402-0204
Service E-mail: service@maloylaw.com

By:     /s/ Marilyn L. Maloy
          Marilyn L. Maloy, Esq.
          Florida Bar No.:  012771
          Attorney for Plaintiff
          For the Firm